| | |
|---|---|
| KEVIN R. BURKE,<br>    *Plaintiff*,<br><br>    v.<br><br>VISION GOVERNMENT SOLUTIONS, INC., TOWN OF FAIRFIELD, DONALD ROSS, JUNE PERRY, MARY KATE MOODY, AND ANNA M. DLUGOSZ,<br>    *Defendants*. | No. 3:17-cv-01955 (VAB) |

**RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Kevin R. Burke ("Plaintiff") sued the Town of Fairfield, Donald Ross, Vision Government Solutions, Inc. ("Vision"), June Perry, Mary Kate Moody, and Anna Dlugosz under 42 U.S.C. § 1983 for alleged violations of his Second Amendment and Fourteenth Amendment rights, as well as under Connecticut law for defamation, and intentional infliction of emotional distress.

For the following reasons, Defendants' motion for summary judgment is **GRANTED.**

I. **FACTUAL AND PROCEDURAL BACKGROUND**

    A. **Factual Background**

        **1. Town of Fairfield and Donald Ross**

Until April 30, 2015, Mr. Burke lived at 2425 Merwins Lane, Fairfield, Connecticut with his wife, Maura Lee Wahlberg. Defs.' Town of Fairfield and Donald Ross Statement of Material Facts, ECF No. 68-2 ¶ 1 (Aug. 8, 2019) ("Fairfield/Ross SMF"); *id.* ¶ 15; *see also* Fairfield/Ross Ex. A – Burke Dep., ECF No. 68-3 (Aug. 8, 2019) ("Burke Dep.").

Mr. Burke has had "a pistol permit from the State of Connecticut" since 2011 or 2012. Fairfield/Ross SMF ¶ 5.

"On or about July 2, 2014, [Fairfield] contracted with Vision to assist the Town with the revaluation of real property[.]" Vision Defs. – Additional Material Facts, ECF No. 70 ¶ 1 (Aug. 9, 2019) ("Vision MF"). June Perry worked for Vision "as the project manager of the Fairfield Revaluation." *Id.* ¶ 2. Mary Kate Moody worked for Vision "as a crew chief who oversaw the data collectors." *Id.* ¶ 3. Aaron Goldberg and Anna Dlugosz worked for Vision "as data collectors, hired for the Fairfield Revaluation." *Id.* ¶ 4. Data collectors visit properties and update property field cards; they "physically measure the exterior or each building." *Id.* ¶¶ 5-6.

Mr. Ross worked for the Town of Fairfield for forty-one years before his retirement. Fairfield/Ross SMF ¶¶ 7-8. From October 2011 until December 15, 2016, Mr. Ross served as the Town Assessor. *Id.* He retired in 2016. *Id.* ¶ 29.

On November 19, 2014, Mr. Goldberg and Ms. Dlugosz "visited [Mr. Burke's p]roperty" as part of their job as data collectors. Vison MF ¶ 7. "At some point after [Mr.] Goldberg and [Ms.] Dlugosz began their exterior inspection, [Mr. Burke] exited the front door of his house and walked across his lawn with his handgun holstered and called out to [Mr.] Goldberg." *Id.* ¶ 9.

Mr. Burke asked Mr. Goldberg to identify himself, *id.* ¶ 10; Mr. Goldberg "produced his Vision identification card and Mr. Burke told him to leave the property[,]" *id.* ¶ 11. Mr. Burke mentioned "he was licensed to carry a handgun and had been burglarized in the past." *Id.* ¶ 12; Pl.'s Statement of Material Facts in Opp'n to Fairfield/Ross, ECF No. 84 ¶ 12 (Sept. 29, 2019) ("Pl. SMF Opp'n Fairfield/Ross"). Apparently, as Mr. Burke turned away from Mr. Goldberg, "he saw [Ms.] Dlugosz approaching from the driveway." *Id.* ¶ 13. At this time, Mr. Burke told her not to "worry about the gun [because he is] licensed to carry." *Id.* ¶ 14. Mr. Burke told Ms.

Dlugosz "to get off his property" and returned inside. *Id*. ¶ 15. Mr. Burke reiterates he never unholstered or pointed a gun at anyone. Pl.'s Additional Material Facts, ECF No. 84 ¶ 1 (Sept. 28, 2019) ("Pl. Additional Facts"). Although they were not on the property, Ms. Moody and Ms. Perry believe the gun was pointed at Mr. Goldberg. *Id*. ¶ 2

After the visit to Mr. Burke's property, Mr. Goldberg and Ms. Dlugosz returned to Town Hall to the makeshift Vision office, Vision MF ¶ 16, and spoke to Mr. Ross about the incident. Fairfield/Ross SMF ¶ 9. According to Mr. Ross, "both Mr. Goldberg and Ms. Dlugosz were visibly shaken." *Id*. ¶¶ 9, 25. "Mr. Ross contacted the Fairfield Police to report what occurred and to document the incident." Fairfield/Ross SMF ¶ 10. Mr. Ross also "notified his supervisor, Robert Mayer, about the incident." Fairfield/Ross SMF ¶ 26.

Mr. Goldberg and Ms. Dlugosz spoke with Mr. Ross and later "went to the Fairfield Police Department to 'give a statement to have a record of what had taken place.'" Vision MF ¶ 17.

Later, on November 7, 2017, someone, a non-party to this action sent "a copy of a printout from Fairfield's CAMA system" for the property to Mr. Burke's counsel. Vision MF ¶ 19; Fairfield/Ross SMF ¶ 16 ("One member of the public, Tom Curran, was able to obtain a copy of the alleged defamatory statement sometime in November 2017."). CAMA refers to "Vision's Computer Assisted Mass Appraisal software system[.]" Vision Defs.' Mem. in Support, ECF No. 71 at 3 (Aug. 8, 2019) ("Vision Mem.").

This person "testified that he obtained the printout . . . , which included the visit line history notes, from an employee working behind the desk at Fairfield Town Hall because of a 'printing issues [sic] with the public terminals.'" *Id*. ¶ 20. He also acknowledged that he was told the visit line history notes were not public information. *Id*. ¶ 21. "The alleged defamatory

statement stated "NO CALLBACK LETTER – OWNER CAME OUT WITH GUN POINTED AT DATA COLLECTORS POLICE REPORT FILED." Fairfield/Ross SMF ¶ 12; Pl. SMF Opp'n Fairfield/Ross ¶ 12.

The parties also dispute the availability of the note to the public. Vision MF ¶ 18; Pl. Statement of Material Facts in Opp'n to Vision Defendants, ECF No. 86 ¶ 18 (Sept. 30, 2019) ("Pl. SMF Opp'n Vision"). Mr. Burke relies on expert testimony to demonstrate that the statement "is public and that no would know who had accessed it and obtained a copy." Pl. SMF Opp'n Fairfield/Ross ¶ 30; *see also* Pl. SMF Opp'n Fairfield/Ross ¶ 11 (Mr. Burke's counsel discovered the "allegedly defamatory statement on the land records . . . .").

Mr. Burke argues that the statement on the record was defamatory "because it stated the owner pointed a gun at data collectors." Fairfield/Ross SMF ¶ 13; Pl. SMF Opp'n Fairfield/Ross ¶ 13; Burke Dep. 59:11-23 ("It's first of all, false. Second of all, it has no business being put in writing especially when it is false . . . it specifically states I pointed the gun at them.").

Mr. Ross denies inputting the allegedly defamatory statement into the CAMA system. Fairfield/Ross SMF ¶ 14; Fairfield/Ross Ex. B – Ross Dep. 102:21-103:9, ECF No. 68-4 (Aug. 8, 2019) ("Fairfield/Ross - Ross Dep.") ("Q: Who entered that information [the statement]? A: I can say I did not not. Q: And how do you know you did not? A: Because I didn't—I never entered that kind of information onto a property record."). In addition, "Vision is unable to determine who entered the visit history note in the CAMA system." Vision MF ¶ 24. Mr. Ross's actions after the incident have been scrutinized by Mr. Burke. Mr. Burke also claims that Mr. Ross took a number of steps after the incident, including; "calling the police 3 times, driving to the police station, [] interacting with [Ms.] Dlugosz about her reported trauma[,] . . . request[ing] a list of property owners in Fairfield who owned firearms after the incident on November 19,

2014, . . . [and] [seeking] a list of Fairfield resident pistol permit holders . . . ." *Id*. Mr. Ross also sought "a list of persons who had firearms in their home[,]" but "never received such a list." Fairfield/Ross SMF ¶ 23. Mr. Ross also claims to have been "unaware that the identifies of persons who have pistol permits was not public record," *id*. ¶ 27, and to have not been "aware of the existence of the alleged defamatory statement until after [Mr. Burke] initiated the present action." Fairfield/Ross SMF ¶ 18.

Mr. Burke claims that Mr. Ross is biased toward Ms. Dlugosz and unsympathetic to Mr. Burke's concerns about burglary. Pl. SMF Opp'n Fairfield/Ross ¶ 18. He insists Mr. Ross's actions indicate his bias and support the inference that Mr. Ross inputted the statement. Mr. Burke considers that Mr. Ross's attempt "to compile a list of permit holders for handguns[,]" Burke Dep. 29:6-7, "combined with his other behavior," *id*. 29:10, lead Mr. Burke to believe Mr. Ross intended to have him arrested, *id*. 29:11. Neither Ms. Perry or Ms. Moody "received a gun permit list from the Fairfield police department, and never disseminated such information to any other individuals." Vision MF ¶ 23.

As of March 6, 2019, Mr. Burke had no "direct or circumstantial evidence," Pl. SMF Opp'n Fairfield/Ross ¶ 19, which supported "his claim that Mr. Ross inputted the alleged defamatory statement[,]" Fairfield/Ross SMF ¶ 19.

Mr. Burke is "unaware of a single person" who now knows he "has a pistol permit because of" Mr. Ross or anyone hired by the Town of Fairfield. Fairfield/Ross SMF ¶ 21; Burke Dep. 100:6-16. His "ability to have a pistol permit has not been affected in any manner." Fairfield/Ross SMF ¶ 28.

Mr. Burke claims "his livelihood has been damaged" because "a background check may discover the police report" and, after reading it, a potential employer could "conclude that [Mr.

Burke] pointed a gun at the date lister" and "would then decide not to offer [Mr. Burke] a job because of the statement." Fairfield/Ross SMF ¶ 32. The Town of Fairfield believes that this claim is speculative and unfounded, *id*., while Mr. Burke contends his "concerns are not unfounded but based on experience[,]" Pl. SMF Opp'n Fairfield/Ross ¶ 32 (citing Burke Decl. ¶¶ 14-19).

Although he seeks damages for emotional distress, Mr. Burke "has never been treated for his emotional distress claim[.]" Fairfield/Ross SMF ¶ 41. Mr. Burke stated that the emotional distress "ruins dinners with his wife when the topic is raised and that it impacts [his] sleep and causes [stress] nightmares." *Id*.; Burke Dep. 129:16-24.

In April 2018, the current tax assessor removed the "allegedly defamatory notation." Vision MF ¶ 22.

B. **Procedural History**

The Court assumes familiarity with the procedural history before these motions for summary judgment. *See* Order, ECF No. 46 (Mar. 12, 2019) (granting in part and denying in part Defendants' motion to dismiss for lack of prosecution); Order, ECF No. 57 (Mar. 12, 2019) ("Order Mot. to Dismiss") (dismissing all federal constitutional claims against the Town of Fairfield in Counts One and Two of the Complaint).

On April 22, 2019, the Town of Fairfield and Donald Ross submitted an Answer to the Complaint. Answer, ECF No. 58 (Apr. 22, 2019).

On August 8, 2019, the Town of Fairfield and Ross moved for summary judgment. Mot. for Summary Judgment, ECF No. 68 (Aug. 8, 2019).

On August 9, 2019, Dlugosz, Moody, Perry, and Vision Government Solutions, Inc. moved for summary judgment. Mot. for Summary Judgment, ECF No. 69 (Aug. 9, 2019).

On September 29, 2019, Plaintiff filed a timely opposition to the Town of Fairfield and Ross's motion for summary judgment. Pl. Opp'n, ECF No. 83 (Sept. 29, 2019).

On September 30, 2019, Plaintiff filed a timely opposition to Dlugosz, Moody, Perry and Vision Government Solutions, Inc.'s motion for summary judgment. Pl. Opp'n, ECF No. 85 (Sept. 30, 2019).

On October 10, 2019, the Town of Fairfield and Donald Ross filed a response to Plaintiff's statement of material facts (ECF No. 84). Response, ECF No. 93 (Oct. 10, 2019).

On October 15, 2019, Dlugosz, Moody, Perry, and Vision Government Solutions, Inc. filed a reply to Plaintiff's opposition. Reply, ECF No. 94 (Oct. 15, 2019).

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011),

and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

### III. DISCUSSION

Because the Court already dismissed the federal claims against the Town of Fairfield, the only federal claims for review now are the Second Amendment retaliation and due process claims brought against Mr. Ross and the Vision Defendants. The Court will address each of the claims in turn and if necessary, the remaining state law claims.

#### A. Second Amendment Retaliation Claim

"Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws'" by a person acting under the color of state law. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989) (quoting 42 U.S.C. § 1983); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (stating that section 1983 "provides 'a method for vindicating federal rights elsewhere conferred,' including under the Constitution") (quoting *Baker v. McCollan*, 443 U.S. 147, 144 n.3 (1979)). "Section 1983 does not itself grant substantive rights; rather it provides 'a method for vindicating federal rights elsewhere conferred.'" *Williams v. City of New York*, No. 99 CV 2697(ARR)(LB), 2006 WL 2668211, at *26 (E.D.N.Y. Sept. 11, 2006) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004)).

"The first inquiry in any § 1983 suit. . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983). As to that inquiry in this case, the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592

(2007). The Second Amendment's protections apply to the states through the Due Process Clause of the Fourteenth Amendment. *McDonald v. Chicago*, 561 U.S. 742, 750 (2010). *Heller* and *McDonald* indicated "that Second Amendment guarantees are at their zenith within the home." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012).

"The fundamental inquiry in a retaliation claim is whether the claimant was punished for the prior exercise of a constitutional right . . . [U]nconstitutional *retaliation* [does not occur] unless the prior conduct targeted by the punishment was itself constitutionally protected." *Kaminsky v. Schriro*, No. 3:14-cv-01885 (MPS), 2016 WL 3460303, at *9 (D. Conn. June 21, 2016) (emphasis in the original). Courts typically find the Second Amendment pertinent when legislatures attempt to restrict or limit ownership or possession of firearms. *See N.Y. State Rifle and Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 252 (2d Cir. 2015) (considering "whether the Second Amendment permits the regulation of the assault weapons and large-capacity magazines at issue"); *Kwong v. Bloomberg*, 723 F.3d 160, 166-69 (2d Cir. 2013) (finding that a $340 fee for a three-year handgun license was constitutional); *U.S. v. Decastro*, 682 F.3d 160, 167-68 (2d Cir. 2012) (finding that a statute which prohibited "the transportation into one's state of residence of firearms acquired outside the state" does not substantially burden an individual's Second Amendment rights).

The second inquiry is whether the plaintiff has shown that "[t]he conduct at issue '[was] committed by a person acting under color of state law.'" *Cornejo*, 592 F.3d at 127 (*Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). The challenged action must be "fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936-37 (1982).

1. **Count One: The Second Amendment Retaliation Claim against Mr. Ross**

Mr. Burke argues that he was retaliated against for the exercise of his Second Amendment right and suffered damages because of that retaliation. Compl. ¶¶ 70-71.[1] In response, Mr. Ross argues that there is no evidence in this record to support this claim.

The Court agrees with Mr. Ross.[2]

First, there is nothing in this record indicating that Mr. Ross committed the act at the root of Mr. Ross's Second Amendment retaliation claim: the notation on the land records about Mr. Burke's alleged use of a gun. Indeed, as Mr. Ross points out, Mr. Burke "has admitted that he is unaware of any specific evidence supporting his claim that Mr. Ross inputted the alleged defamatory statement . . . . " Fairfield/Ross Mem. At 5.

At this stage of the case, Mr. Burke cannot rely on his own impressions to create a triable issue of fact as to Mr. Ross's participation in or entry of the visiting history line notation. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.") (citing *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)); *eCommission Sol., LLC v. CTS Holdings, Inc.*, No. 18-1672-cv, 2019 WL 2261457, at *2 (2d Cir. May 28, 2019) (finding that "the admissibility of evidence on a motion for summary judgment is subject to the same rules

---

[1] Plaintiff mistakenly states that the Court dismissed Count One against Mr. Ross and only addressed the Connecticut State Constitution Article 1, § 15 claim against Mr. Ross. Pl.'s Opp'n to Fairfield/Ross, ECF No. 83 at 2 (Sept. 27, 2019); *see also* Order Mot. to Dismiss ("The Court therefore GRANTS IN PART the motion to dismiss and dismisses all federal constitutional claims against the Town of Fairfield in Counts One and Two of the Complaint."). In his Complaint, Mr. Burke alleged that the notion entered "in the land records that [Mr.] Burke pointed a gun at [Mr. Goldberg and Ms. Dlugosz]" was retaliation for his exercise of his right to bear arms under the Second Amendment and Article 1, § 15 of the Connecticut Constitution and denied him "notice or [the] opportunity to be heard." Compl. ¶ 70.

[2] Because a violation of a statute constitutional right is not cognizable under § 1983, the Court will decline review of Mr. Burke's Section 1983 claim based on Article I, § 15 of the Connecticut Constitution. *See Raadvanksy v. City of Olmstead Falls*, 395 F.3d 291, (6th Cir. 2005) ("[A] claimed violation of a state constitutional right is not cognizable under § 1983."); *Hansell v. Brazell*, 85 F. App'x 237, 238 (2d Cir. 2004) ("In order to seek redress through § 1983 . . . , a plaintiff must assert the violation of federal law." (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).

that govern the admissibility of evidence at trial" (citations omitted)); *Scheiner v. Wallace*, No. 93 CIV. 0062 (RWS), 1996 WL 633418, at *8 (S.D.N.Y. Oct. 31, 1996) (granting a motion for summary judgment where plaintiffs introduced admissible evidence that did not create a genuine issue of material fact).

Second, there is no evidence in this record that Mr. Burke suffered any harm as a result of this notation. Although not dispositive, Mr. Burke's use of his firearm has not been affected in any way, whether through restriction of his pistol permit or any other loss of any alleged right to the use of a firearm. *Cf. N.Y. State Rifle and Pistol Ass'n*, 804 F.3d at 254 ("Neither *Heller* nor *McDonald* . . . delineated the precise scope of the Second Amendment or the standards by which lower courts should assess the constitutionality of firearms restrictions."); *Decastro*, 682 F.3d at 165 ("[T]he natural explanation is that time, place and manner restrictions may not significantly impair the right to possess a firearm for self-defense, and may impose no appreciable burden on Second Amendment rights.").

Accordingly, the Court will dismiss Count One and Mr. Burke's Second Amendment claim as it relates to Mr. Ross.

### 2. Count Two: The Second Amendment Retaliation Claim against the Vision Defendants

The Vision Defendants, Vision Government Solutions, June Perry, Mary Kate Moody, and Anna Dlugosz, argue that "there is no proof as to which—*if any of the defendants*—entered the note into the CAMA system of which [Mr. Burke] complains." Vision Mem. at 7 (emphasis in the original). They also argue that when Mr. Burke became aware of the CAMA note, he no longer owned the property. *Id*.

While Mr. Burke argues that a separate lawsuit brought by Ms. Dlugosz is "a form of retaliation against him for the exercise of a constitutional right," Vision argues that it is not a

party to that lawsuit and that the lawsuit "is wholly unrelated to an action or policy of Vision." *Id*. Moreover, in Vision's view, Ms. Dlugosz is not named individually in Count One and her "conduct as a private citizen [] is outside the scope of her employment and entirely unrelated to the revaluation work, [and therefore] does not trigger 42 U.S.C. § 1983 liability for Vision." *Id*. at 8.

Vision also notes that Mr. Burke alleges violations of his state rights, under Article I, § 15 of the Connecticut Constitution, as part of his § 1983 claim. Vision Mem. at 13. He has not "alleged a deprivation of a *federally* protected right" and so has no cognizable § 1983 claim. *Id*. (emphasis in the original).

Furthermore, to the extent Mr. Burke's "claims against the corporate defendant Vision rely on a *Monell* theory," Vision Mem. at 5, Vision believes summary judgment is appropriate "because [Mr. Burke] cannot prove the necessary components to support a *Monell* claim," *id*. at 9. As a contractor hired by a governmental entity, in Vision's view, it "can be found liable under § 1983 only where the [contractor] itself causes the constitutional violation at issue," and there is no such evidence in this record. *Id*. at 10.

Mr. Burke agrees that "if the actual government entity [Fairfield] has been found not to have committed constitutional violations pursuant to 42 U.S.C. § 1983 then . . . the same would necessarily apply to [V]ision." Pl.'s Opp'n to Vision Defs., ECF No. 85 at 3 (Sept. 30, 2019) ("Pl. Opp'n to Vision"). While Mr. Burke does not oppose Vision's motion for summary judgment but does not abandon his claim, he "recognizes that the Court's prior ruling forecloses opposing these claims in the trial court." *Id*. at 3.

The Court agrees.

For the same reasons that the Court has dismissed the Second Amendment retaliation claims previously against the Town of Fairfield and now Mr. Ross, the Court will dismiss these same claims against the Vision Defendants.

Accordingly, the Court will dismiss Count Two and the Second Amendment retaliation claims against the Vision Defendants.

### B. The Due Process Claims

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Matthews v. Eldridge*, 42 U.S. 319, 332 (1976).

"The Due Process Clause of the Fourteenth Amendment requires states to operate in accordance with the 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.'" *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018) (quoting *Duncan v. Louisiana*, 291 U.S. 145, 148 (1968)). Substantive due process requires plaintiffs to show deprivation of a constitutional right under circumstances that were "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience." *See Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) (quoting *Rochin v. California*, 342 U.S. 162, 172 (1962)). Violation of the substantive standards of the Due Process Clause requires "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Id*. at 259.

The right to privacy is a type of liberty interest. *O'Connor v. Pierson*, 426 F.3d 187, 200 (2d Cir. 2005). "The privacy right takes two somewhat different forms: the right to personal

14

autonomy (i.e., the right to make certain choices free of unwarranted government interference) and the right to confidentiality (i.e., the right to hold certain information private.)" *Id*. at 201; *see also Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994) ("More precisely, this right to privacy can be characterized as a right to 'confidentiality,' to distinguish it from the right to autonomy . . . ."). "To prevail when challenging executive action that infringes a protected right, a plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense,'. . . '[O]nly the most egregious official conduct,' [] that 'shocks the conscience,' will subject the government to liability for a substantive due process violation based on executive action." *O'Connor*, 426 F.3d at 203 (citations omitted).

"The Supreme Court has long implied that the zone of privacy protects 'the individual interest in avoiding disclosure of personal matters.'" *Hancock*, 882 F.3d at 65 (quoting *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)). "Second Circuit law currently recognizes the right to privacy in one's personal information in a limited set of factual circumstances involving one's health and personal financial information[,]" which does not include the "[d]isclosure of one's name, address, and status as a firearm licensee. . ." *Doe No. 1. V. Putnam Cty.*, 344 F. Supp. 3d 518, 540-41 (S.D.N.Y. 2018).

Mr. Burke's substantive due process claim fails for two reasons: he fails to assert a privacy interest and fails to assert that such a privacy interest has been infringed. It is unclear that the privacy interest in one's status as a firearm permit holder would be protected by the right to privacy under the federal Constitution. *Id*. at 541 ("Disclosure of one's name, address, and status as a firearm license is not one of the 'very limited circumstances' in which the Second Circuit has found the right to privacy to exist.")

### 1. Due Process Claim Against Mr. Ross

Connecticut law creates a privacy interest in firearm permits:

> the name and address of . . . a state or a temporary state permit to carry a pistol or revolver pursuant to subsection (b), or a local permit to carry pistols and revolvers issues by local authorities prior to October 1, 2001, shall be confidential and shall not be disclosed,

Conn. Gen. Stat. § 29-28(d). But this privacy interest comes with a significant exception—disclosures made to law enforcement officials. *Id.* ("such information may be disclosed to law enforcement officials acting in the performance of their duties. . . .").

Here, Mr. Burke claims that Mr. Ross told the Fairfield Police Department about his firearm license. Mr. Ross's statements, however, expressly fall within Connecticut's statutory exception and thus cannot form the basis of a federal due process claim against Mr. Ross. Furthermore, the status of a person's firearm license is "not one of the 'very limited circumstances' in which the Second Circuit has found the right to privacy to exist." Fairfield/Ross Mem. at 6 (quoting *Doe No. 1*, 344 F. Supp. 3d at 540).

In any event, even if there was such a disclosure, Mr. Ross's actions are not "'so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Analysis of action that "shocks the conscience is highly context specific." *Bolmer v. Oliveira*, 594 F.3d 134, 143 (2d Cir. 2010). Contacting the police and discussing a person's firearm permit is not so egregious or outrageous that it shocks the conscience, nor was it arbitrary. *See Matson v. Bd. of Educ. of City of N.Y.*, 631 F.3d 57 (2d Cir. 2011) (finding the disclosure of plaintiff's fibromyalgia did not implicate a privacy right); *Lombardi v. Whitman*, 485 F.3d 72 (2d Cir. 2007) (holding that federal agency officials making

false or misleading statements about the air quality at ground zero was deliberate indifference which shocked the conscience); *Bento v. City of Milford*, 213 F. Supp. 3d 346, 358 (D. Conn. 2016) ("In order to establish a breach of constitutional rights to privacy and substantive due process, [plaintiff] must 'show not only that [defendants'] action was literally arbitrary, but that it was arbitrary in the constitutional sense.'"). It cannot be said that this act was truly "brutal and offensive to human dignity." *Lombardi*, 485 F.3d at 81 (citation omitted).

As a result, there is no basis for a due process claim against Mr. Ross.

Accordingly, the Court will dismiss the due process claim brought against Mr. Ross under Count Two.

### 2. Vision Government Solutions, Inc.

As to the due process claims against the Vision Defendants, as these defendants point out, "[t]here is no evidence that [Mr. Burke's] handgun permit status was disclosed to anyone by the Vision Defendants, and none of this points to a wrongful act or viable basis for a damage claim." Vision Mem. at 15. Likewise, "there is no evidence in the record [that] a Vision Defendant undertook any action regarding [Mr. Burke's] gun permit." *Id*. Indeed, Mr. Burke "readily admits that he knows of no person who learned of his pistol permit status through the conduct of any defendant." *Id*.

The Court agrees.

Consistent with the analysis of the failure of the due process claims against Mr. Ross, the due process claims against the Vision Defendants also fail.

Accordingly, the Court will dismiss the due process claims brought against the Vision Defendants under Count Two.

### C. Qualified Immunity Counts One and Two

While the Court grants summary judgment on Counts One and Two for the reasons discussed above, the Court also notes that even if those grounds for dismissal did not exist, that qualified immunity as to all of the defendants—including with respect to the Vision Defendants to the extent they are considered to be governmental actors for purposes of this case—is appropriate.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Huth v. Haslun*, 598 F.3d 70, 72 (2d Cir. 2010) ("To overcome the defense of qualified immunity, a plaintiff must show both (1) the violation of a constitutional right and (2) that the constitutional right was clearly established at the time of the alleged violation." (citing *Pearson*, 555 U.S. 223)). "A defendant is entitled to qualified immunity only if he can show that, viewing the evidence in light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law." *Golodner v. Berliner*, 770 F.3d 196, 205 (2d Cir. 2014) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006)).

Mr. Ross is entitled to qualified immunity on Counts One and Two.

To the extent Mr. Burke's allegations against Mr. Ross arise from his alleged inputting of the defamatory statement into the CAMA system or Mr. Burke's alleged property interest in the contents of the tax assessor records, Mr. Ross is entitled to qualified immunity. In both instances, Mr. Ross was clearly acting in his capacity as town assessor. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015) ("A state employee acting in his official capacity is

18

acting 'under color of state law.'"). Furthermore, as evidenced by the Second Circuit's murky precedent on the contours of an individual's Second Amendment rights, the right Mr. Burke claims was violated was not clearly established at the time Mr. Ross acted. *See Mullenix v. Luna*, 136 S.Ct. 305, (2015) ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" (citation omitted)).

The Vision defendants are similarly entitled to qualified immunity on Counts One and Two. Even if Mr. Burke had adequately created a genuine issue of material fact that a Vision defendant had entered the defamatory statement, the Second Amendment right violated was not clearly established at the time of the incident. *See X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65-66 (2d Cir. 1999) (An official is entitled to qualified immunity if the right was not clearly established at the time of the conduct or if the defendant's conduct was objectively reasonable considering the rights clearly established at the time).

### D. Supplemental Jurisdiction

Having determined that all federal claims over which the Court had original jurisdiction should be dismissed, the Court may decline to exercise supplemental jurisdiction over Plaintiff's remaining claims under Connecticut law. 28 U.S.C. § 1367(c)(3); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 206) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3)).

Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Id*. (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)

and citing *Itar-Tass News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446-47 (2d Cir. 1998). "In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Cohill*, 484 U.S. at 350 n. 7).]

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motions for summary judgment are **GRANTED.**

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of January, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE